The People of the State of New York ex rel. Duane L. Tower et al., as Copartners under the Firm Name of C. J. Tower & Sons, Appellants, against State Tax Commission, Respondent.

Argued February 26, 1940; decided April 16, 1940.

*Paul P. Cohen* and *Harrop A. Freeman* for appellants. The firm is not engaged in an " unincorporated business " but, as a customhouse broker, is engaged in the practice of a profession within the meaning of section 386 of the Tax Law. (*People* v. *Garlock*, 170 Misc. Rep. 686; *Flint* v. *Stone Tracy Co.*, 220 U. S. 107; *State* v. *Oberle, Inc.*, 140 So. Rep. 239; *United States* v. *Laws*, 163 U. S. 258; *Iselin* v. *Flynn*, 90 Misc. Rep. 164; *People* v. *Kelly*, 255 N. Y. 396; *Commissioners of Inland Revenue* v. *Maxse*, [1919] 1 K. B. 647.)

*John J. Bennett, Jr.*, Attorney-General (*Joseph M. Mesnig* of counsel), for respondent. The intent of article 16-A of the Tax Law was to reach, generally, those businesses, vocations or callings which, if conducted in corporate form, became subject to taxation under articles 9, 9-A, 9-B or 9-C of the Tax Law. (*People* v. *Ballard*, 134 N. Y. 269; *Town of Amherst* v. *County of Erie*, 236 App. Div. 58; 260 N. Y. 361.) The Tax Commission acted reasonably and intelligently in ·classifying as professions only such as are dealt with in articles 48 to 58 of the Education Law (Cons. Laws, ch. 16). (*O'Reilly* v. *Erlanger*, 108 App. Div. 318; *Bond* v. *Cooke*, 237 App. Div. 229; *People* v. *Kelly*, 255 N. Y. 396; *Matter of Recht & Kutcher* v. *Graves*, 257 App. Div. 889; *Cecil* v. *Inland Revenue Commissioners*, 36 T. L. R. 164; *Currie* v. *Inland Revenue Commissioners*, [1921] 2 K. B. 332; *Robbins Herbal Inst.* v. *Federal Comm. of Taxation*, 32 C. L. R. 457; *Bradfield* v. *Federal Comm. of Taxation*, 34 C. L. R. 1.) Appellants were engaged in conducting a business or occupation. (*Matter of Corsi*, 235 Fed. Rep. 994; *Matter of Landeck & Merrill*, 20 Fed. Rep. [2d] 249; *United States* v. *Vandiver*, 133 Fed. Rep. 252; *People ex rel. Metropolitan St. Ry. Co.* v. *Tax Comm.*, 174 N. Y. 417.)

LEWIS, J. Does the term "profession" as employed in article 16-A, section 386, of the Tax Law (Cons. Laws, ch 60), which makes provision for the collection of the unincorporated business tax, include a customhouse broker?

The question is presented upon an appeal by leave of this court from an order of the Appellate Division in a proceeding under article 78 of the Civil Practice Act, unanimously confirming an assessment of an unincorporated business tax for the year 1935 against the appellant copartnership.

Responsive to recommendations contained in reports filed in 1922 and 1925 by the New York Joint Legislative Committee on Taxation and Retrenchment and the report filed in 1932 by the New York State Commission for the Revision of the Tax Laws, the Legislature enacted article 16-A of the Tax Law (Laws of 1935, ch. 33), known as the Unincorporated Business Tax Law. The reports mentioned above and the debates during the Legislature's consideration of the measure indicate that the legislative purpose was not only to create a new source of revenue but also to lay a tax upon various types of non-corporate enterprise competing with corporations in this State which are required to pay a corporate franchise tax measured by net income. (Tax Law, art. 9-A, § 215. See Legislative Document [1932], vol. 18, No. 77, pp. 183, 184.)

The incidence of the unincorporated business tax is upon those businesses or vocations which, if conducted by corporations, would be subject to tax. The tax itself is " equal to four per centum of the entire net income within this state of [any] unincorporated business and shall be payable by the taxpayer conducting the same." (Tax Law, § 386-a.)

Our present problem arose in the course of administering section 386 which, after indicating the type of trades, businesses or occupations to be included within the term " unincorporated business," and thus subject to the tax, contains the following exclusionary clause: " * * * but exclude the practice of law, medicine, dentistry, architecture

which under existing law cannot be conducted under corporate structure, and any other case in which more than eighty per centum of the gross income is derived from the personal services actually rendered by the individual or the members of the partnership or other entity *in the practice of any other profession* and in which capital is not a material income producing factor."

It is not disputed that within the terms of the statute " eighty per centum of the gross income " of the appellant copartnership " is derived from the personal services actually rendered by the  *  *  *  members;" nor is it claimed that in the services which the copartnership renders capital is " a material income producing factor."

Our inquiry is thus narrowed to the question whether the appellant " C. J. Tower & Sons," doing business as a customhouse broker, is engaged in the practice of a " profession " and thus exempt by section 386 from the unincorporated business tax.

The appellant copartnership was organized in 1917. It consists of three partners, all of whom devote their business hours to partnership affairs. One of the partners is admitted to the bar in this State. The other two partners studied " customhouse law " while attending high school and thereafter under the tutelege of their father, who founded the firm. Each of the three present partners has qualified for a customhouse broker's license required by the United States Treasury Department. In this instance, however, the license has been issued in the name of the copartnership, as is permitted by Treasury Department regulations.

Neither admission to the bar nor special education is required of the partners to qualify themselves or the partnership for a license which permits the rendering of service as a customhouse broker. It is sufficient if the Treasury Department is satisfied that each partner bears a good reputation and is possessed of business integrity, knowledge of customs law and procedure and a fitness to render valuable service to importers and exporters. (See U. S. Treasury Dept. Circular No. 559, § 3, subds. b and f.) The record

shows that the service rendered by the partnership includes consultation with patrons by the various partners and some of their assistants for the purpose of advising as to import duties upon merchandise to the end that the cost of importation may be minimized. Under the license issued to the partnership the partners may appear before the local Collector of Customs in behalf of their patrons. They do not, however, appear on appeal in either the United States Customs Court or to the United States Court of Customs and Patent Appeals. Upon such appeals it is their custom to retain special counsel.

It is important to note that under the Tariff Act of 1930, section 641 (U. S. Code, tit. 19, § 1641), the business of a customhouse broker may be conducted by a corporation. In fact, the record discloses that one of the appellants' competitors is a corporation. In connection with this fact it is significant that by section 386 the Legislature chose to exempt the professions of the law, medicine, dentistry and architecture for the express reason that " under existing law [they] cannot be conducted under corporate structure." The reason for such exemptions thus stated in the statute makes clear the Legislature's intent to reach by tax those vocations which, if conducted in corporate form, would be the subject of taxation. We thus have in the reasons assigned for the exemptions an aid to construction in the present proceeding wherein it appears that a copartnership is conducting tax-free the service of a customhouse broker when concededly such service may be " conducted under corporate structure."

The exemption from tax by section 386 is to be granted to a partnership which, under stated conditions not material here, derives its income " in the practice of any other profession " than the law, medicine, dentistry and architecture. It may be conceded that the service rendered by a customhouse broker requires a knowledge of customs law, tariffs and Treasury Department regulations concerning customhouse matters and procedure for the purpose of assisting a patron in minimizing the cost of importing

dutiable goods. The record shows that such knowledge is readily acquired — as in many vocations which might be named — by close, intelligent attention to daily transactions in the business and to current governmental regulations which control them. (See *Matter of Recht* v. *Graves*, 257 App. Div. 889; leave to appeal denied, 281 N. Y. 886.) The time required to gain a working knowledge of these matters varies with the individual. Although knowledge of tariff laws and customhouse procedure is put to daily use by a customhouse broker, there is testimony by the senior partner of the appellant firm — himself an attorney at law — that " none of [his] activities were such that they required the legal education." Indeed, we are told by the same witness, " If you have normal intelligence, you can almost do it."

We find nothing in the record to prove that the service rendered by a customhouse broker requires knowledge of an advanced type in a given field of science or learning gained by a prolonged course of specialized instruction and study. Such a requirement we regard as implicit in the term " professional " when given its legal application and it is read in its context in the statute here involved.

The order should be affirmed, with costs.

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, SEARS and CONWAY, JJ., concur.

Order affirmed.